UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRAQ TELECOM LIMITED,<br><br>Plaintiff,<br><br>-v-<br><br>SIRWAN SABER MUSTAFA, KOREK TELECOM COMPANY LLC, and KOREK INTERNATIONAL (MANAGEMENT) LIMITED,<br><br>Defendants,<br><br>and<br><br>IBL BANK S.A.L.,<br><br>Garnishee. | 25 Misc. 77 (DEH)<br><br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Before the Court is a turnover motion brought by Plaintiff Iraq Telecom Ltd. relating to a $1.8 billion judgment against Judgment Debtors Sirwan Saber Mustafa ("Mr. Barzani"), Korek Telecom Company LLC ("Korek"), and Korek International (Management) Limited ("CS Ltd.," and collectively, "Judgment Debtors"). The Intercontinental Bank of Lebanon ("IBL") holds roughly $165 million in assets belonging to the Debtors, which Plaintiffs seek to recover. For the reasons stated herein, the Motion is **DENIED WITHOUT PREJUDICE**.

## BACKGROUND

The underlying facts are thoroughly addressed in the several arbitration awards and opinions confirming such awards, familiarity with which is presumed. *See Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 597 F. Supp. 3d 657 (S.D.N.Y. 2022), *aff'd*, No. 22-832, 2023 WL 2961739 (2d Cir. Apr. 17, 2023); Pet. to Confirm a Foreign Arbitration Award, ECF No. 21, *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, No. 21 Civ. 10940 (S.D.N.Y. Jan. 28, 2022); *Iraq Telecom Ltd. v. Mustafa*, No. 24 Civ. 3728, 2024 WL 3927219, at *1 (E.D. Pa. Aug. 23, 2024); *see also* Decl. of Kristin N.

Tahler, Ex. 1 (“ICC Award”), ECF Nos. 22-1, 22-2, 22-3; Decl. of Kristin N. Tahler, Ex. 2, ECF No. 22-4 (“LAMC Award”). In short, this case arises out of Iraq Telecom’s efforts to recover their investment of hundreds of millions of dollars in Korek, an Iraqi enterprise, after it was taken from them through a set of elaborate fraud and bribery schemes committed by the Judgment Debtors and, as found by the various arbitrators and confirmed by Courts, IBL. *See* ICC Award § U; LAMC Award ¶¶ 966-73, 1031; *Iraq Telecom Ltd.*, 2024 WL 3927219, at *5; *Iraq Telecom Ltd.*, 597 F. Supp. 3d at 669. The judgment, accounting for post-Award interest, totals approximately $1.81 billion, plus post-judgment interest. *See* Registration of Foreign J., ECF No. 1.

Iraq Telecom now seeks to recover against the Judgment Debtors through their assets held in accounts at IBL in Lebanon. It seeks to invoke jurisdiction over these assets based on IBL’s correspondent banking relationships with several New York-based U.S. banks including: (1) J.P. Morgan Chase Bank NA (2018 to the present); (2) Citibank N.A. (2013 to present); (3) The Bank of New York Mellon (2011 to present); and (4) Wells Fargo Bank N.A. (2011 to 2012) (the active accounts being the “New York Accounts”). *See* Mem. in Supp. of Mot. for Turnover at 12, ECF No. 21; *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 268 (2d Cir. 2022) (discussing attachment of IBL’s funds in the New York Accounts). IBL continues to maintain U.S.-dollar reserves in its New York Accounts, in part to comply with the attachment order issued by another judge of this Court. *See* Order of Attach., ECF No. 186, *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, No. 21 Civ. 10940, (S.D.N.Y. Jan. 9, 2023). According to IBL’s 2018 Annual Report, “[t]he primary currency of the economic environment in which the Group operates (functional currency) is the U.S. Dollar.” *IBL Bank Annual Report 2018*, at 78, https://perma.cc/8EDT-JE3L (last visited

Sep. 18, 2026).[1] IBL "provides its clients with a full range of commercial banking services and products, in addition to trade finance services through its network of international correspondent banks," including its New York Accounts. *Id*. at 22. As confirmed by post-judgment discovery obtained in related proceedings from New York correspondent banks, IBL used correspondent accounts in New York to receive U.S.-dollar deposits into the Judgment Debtors' IBL Accounts. *See* Decl. of Kristin N. Tahler, Ex. 8, ECF No. 22-11 (SWIFT transfer records).

## DISCUSSION

IBL opposes turnover on two grounds. First, it argues that it is not subject to the jurisdiction of this Court for purposes of the turnover motion due to the insufficiency of its contacts with New York. Second, it contends that it has a superior interest in the assets sought by Iraq Telecom. As explained below, the Court concludes that, with respect to the accounts denominated in U.S. dollars, IBL has purposefully availed itself of the New York banking system by accepting a transfer of dollars from its New York correspondent accounts and is therefore subject to jurisdiction under New York's long-arm statute. However, the Court concludes that the record is insufficiently developed to support turnover as to these assets because the full scope of IBL's rights to the assets in the Barzani and Korek dollar accounts is unclear on the current record. Accordingly, the Motion for Turnover is **DENIED WITHOUT PREJUDICE**.

### I. Personal Jurisdiction

#### A. Legal Standard

"[A] New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee."

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

*Peterson v. Bank Markazi*, 121 F.4th 983, 998 (2d Cir. 2024). When assessing whether specific personal jurisdiction "exists over a non-domiciliary, [courts] first consider whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process." *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023) (per curiam).

New York's long-arm statute, N.Y. C.P.L.R. § 302(a), permits the exercise of personal jurisdiction over a non-domiciliary such as IBL if (1) "the defendant 'transacts any business' in New York," and (2) the underlying "cause of action 'aris[es] from' such a business transaction." *Licci ex rel. Licci v. Leb. Can. Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) ("*Licci I*"). On the first prong, "complaints alleging a foreign bank's repeated use of a correspondent account in New York on behalf of a client—in effect, a 'course of dealing'—show purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." *Foley v. Union de Banques Arabes et Francaises*, 683 F. Supp. 3d 375, 387 (S.D.N.Y. 2023). "Comparatively, the mere existence of a correspondent bank relationship between a foreign bank defendant and a New York financial institution, even if coupled with use of that correspondent account in an isolated transaction entirely at the direction of the defendant foreign bank's customer, will not be sufficient to give rise to personal jurisdiction over the defendant foreign bank for claims arising from the transaction." *Id*. As to the second prong, there must be an "articulable nexus" or "substantial relationship" between the business transaction and the claim asserted. *Id*. "[T]he inquiry under the statute is relatively permissive," and only requires that the claims be "in some way arguably connected to the transaction" such that "the latter is not completely unmoored from the former." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339-40 (2012) ("*Licci II*").

**B. Application**

1. Transacting Business

The Court first concludes that IBL transacted business in New York within the meaning of C.P.L.R. § 302(a). Iraq Telecom supplied evidence, which IBL does not contest, that there were at least 20 transactions where IBL used its New York correspondent accounts to facilitate money transfers for the Judgment Debtors alone—including $155 million to Barzani's Collateral Account. *See* Decl. of Kristin N. Tahler, Ex. 8, ECF No. 22-11 (SWIFT transfer records); LAMC Award ¶¶ 429, 620, 911; ICC Award § K ¶¶ 49-65. The use of a New York correspondent account "dozens of times," as opposed to "once or twice by mistake," is proof of lack of coincidence and "reflects [the bank's] purposeful availment of the privilege of doing business in the New York forum." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) ("*Licci III*").

IBL nevertheless argues that, in order to meet the transacting business prong under C.P.L.R. § 302(a), a plaintiff must show an intentional choice to route a transaction through New York. But courts have repeatedly rejected that argument. *See Foley*, 683 F. Supp. 3d at 389-90 (collecting cases). In fact, "the sheer frequency of [IBL's] use of New York correspondent accounts is likely sufficient on its own to constitute 'purposefulness.'" *Id.* at 390. Accordingly, the Court concludes that IBL transacted business in this District for purposes of C.P.L.R. § 302(a).

2. "Arising from" the relevant business

The second prong of the inquiry under C.P.L.R. § 302(a)(1) is whether the "cause of action aris[es] from" the non-domiciliary's "business within the state." C.P.L.R. § 302(a)(1). Thus, the question is whether Iraq Telecom's claim for turnover arises from "[IBL's] use of its correspondent account." *Licci III*, 732 F.3d at 168.

A motion to enforce a money judgment is governed by Rule 69(a), which provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018) (quoting Fed. R. Civ. P. 69(a)). Under N.Y. C.P.L.R. § 5225(b), Iraq Telecom, as judgment creditor, may proceed against IBL as "a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor[.]" C.P.L.R. § 5225(b). "[W]here it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require [IBL] to pay the money" to Iraq Telecom. *Id.*

Turning now to whether Iraq Telecom's turnover claim arises from IBL's business in New York, the Court begins by noting that the "arising from" prong of the analysis under C.P.L.R. § 302(a)(1) is subject to a liberal standard. As the Second Circuit has explained,

> The "arising from" prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." [*Licci II*, 20 N.Y.3d at 339]. According to the [New York Court of Appeals], whether a plaintiff's claim arises from a defendant's New York contacts depends upon "the nature and elements of the particular causes of action pleaded." *Id.* at 340. However, section 302(a)(1) "does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Id.* at 341.

*Licci III*, 732 F.3d at 168-69.

The caselaw applying C.P.L.R. 302(a)(1) in the context of a turnover motion is sparse. But the Second Circuit most recently found jurisdiction over a turnover action where:

> Between July 2008 and October 2012, Clearstream [the Garnishee] received 62 interest and principal payments originating from the Markazi bonds into the New

> York Account. It came "in[to the] possession or custody," N.Y. C.P.L.R. 5225(b), of the $1.68 billion right to payment in Luxembourg because each time Clearstream received a bond proceed payment into the New York Account on Bank Markazi's [the Judgement Debtor's] behalf it credited Account 13675 with a right to payment in the same amount. The right to payment in Luxembourg therefore reflects the proceeds of transactions that Clearstream undertook using the New York Account. Bank Markazi's "interest" in and purported "entitle[ment] to the possession of," *id.*, the $1.68 billion could not exist without Clearstream's corresponding transactions in New York. Neither element of N.Y. C.P.L.R. 5225(b) can thus be extricated from the "frequen[t] and deliberate nature of [Clearstream]'s use of its correspondent account." *Licci III*, 732 F.3d at 168. We therefore conclude that the Plaintiffs' cause of action for turnover under N.Y. C.P.L.R. 5225(b) "arises from" Clearstream's New York business transactions such that the exercise of personal jurisdiction over Clearstream with respect to the turnover claim complies with the New York longarm statute.

*Peterson*, 121 F.4th at 1004-05. Similarly, in one case involving a U.S.-based bank,[2] a court in the Eastern District of New York held that the plaintiff's turnover "claim has a substantial relationship to TD Bank's business activities in New York," because the claim concerned "funds from accounts that TD Bank operates and maintains on behalf of [the] Judgment Debtor, a New York customer." *Fabric Selection, Inc. v. A & T Trading US, Inc.*, No. 20 Misc. 864, 2021 WL 811371, at *5 (E.D.N.Y. Feb. 5, 2021), *report and recommendation adopted*, 2021 WL 810340 (E.D.N.Y. Mar. 3, 2021). In other words, the court reasoned that in assessing whether a claim for turnover arises from business in New York, it is appropriate to focus on whether the motion seeks turnover of assets held because of the respondent's business conducted in New York.

IBL protests that "[a]ccepting that position would mean that any foreign bank with a correspondent account in New York, that has ever received funds through its correspondent account for the benefit of a judgment debtor, would be subject to personal jurisdiction in New

---

[2] Although this case involved a U.S.-based bank and not a foreign one, that does not appear to matter for purposes of determining whether jurisdiction in New York is proper, as the long-arm statute's applicability does not turn on whether a non-domiciliary of New York is internationally- or domestically-based.

York for turnover claims relating to that judgment debtor." Opp'n to Mot. for Turnover at 11 , ECF No. 45-1. That is incorrect. It is not that any bank with a correspondent account in New York is subject to jurisdiction under C.P.L.R. § 302(a)(1)—rather, for purposes of a turnover motion, the long-arm statute subjects a bank to jurisdiction when the motion seeks assets held by a bank that it possesses *because* of its "frequen[t] and deliberate" use of New York correspondent banking services. *Peterson*, 121 F.4th at 1005. That is the implication of the Second Circuit's decision in *Peterson*, and IBL cites no authority to the contrary.[3] Thus, applying that logic here, the Court now turns to the relevant question under C.P.L.R. § 302(a)(1): whether Iraq Telecom seeks turnover of assets held by IBL because of IBL's use of New York-based correspondent accounts.

*a. Dollar Accounts*

Applying the analysis above, the Court concludes that Plaintiff's claims for turnover arise out of IBL's use of a New York correspondent account. IBL became "a person in possession or custody of money or other personal property in which the judgment debtor has an interest"—

[3] The Court notes that several other courts, including the Second Circuit, have sometimes undertaken the C.P.L.R. § 302(a)(1) jurisdictional analysis in the context of turnover motions by examining the whether the plaintiff's *underlying claims* that gave rise to a debtor's liability (rather than the turnover motion itself) arise from the use of New York correspondent accounts. *See, e.g.*, *Licci III*, 732 F.3d at 168-69 ("Because the defendant's allegedly culpable conduct stems from this use of the New York correspondent account, the Court of Appeals concluded, the plaintiffs' claims are sufficiently related to LCB's New York business activity to satisfy the second prong of section 302(a)(1)."). In absence of clear authority indicating that this is the proper test under the "arising from" prong of C.P.L.R. § 302(a)(1), and because IBL does not raise this argument in its opposition brief, the Court need not consider it. But the Court notes that, even if an analysis of the relatedness of the underlying claims is required, the result would likely be unchanged, because the Court would likely find that Iraq Telecom's underlying claims also arise from IBL's use of correspondent accounts. Iraq Telecom alleges and, according to various arbitrators and as confirmed by Courts, has proven an intentional and coordinated scheme to defraud Iraq Telecom, knowingly participated in by IBL. Given the permissive standard under C.P.L.R. § 302(a)(1), the use of New York correspondent accounts to orchestrate this fraud would likely similarly be sufficient to confer jurisdiction.

namely, the dollar-denominated assets in question—*because* of IBL's use of these New York correspondent accounts to facilitate the transfers of these assets. C.P.L.R. § 5225(b). And the Judgment Debtors' "interest in and purported entitle[ment] to the possession of [the dollar-denominated assets] could not exist without" IBL's access to and transfers through correspondent accounts in New York. *Peterson*, 121 F.4th at 1004-05. "Neither element of N.Y. C.P.L.R. 5225(b) can thus be extricated from the frequent and deliberate nature of [IBL]'s use of its correspondent account." *Id.* at 1005. "Thus, it is reasonable to conclude that Plaintiff's claim has a substantial relationship to [IBL's] business activities in New York." *Fabric Selection, Inc.*, 2021 WL 811371, at *5.

Further, the exercise of jurisdiction over IBL with respect to these accounts comports with due process principles. A bank's "deliberate and recurring use" of a New York correspondent bank is the "paradigmatic example of 'purposeful availment.'" *Lelchook v. Societe Generale de Banque au Liban S.A.L.*, 147 F.4th 226, 241 (2d Cir. 2025). "[IBL] has purposefully availed itself of the laws of New York, [and] it would be unfair to allow it to evade jurisdiction in the state[.]" *Peterson*, 121 F.4th at 1006-07. Accordingly, the Court will exercise jurisdiction over IBL with respect to the dollar accounts.

*b. Non-Dollar Accounts*

The above analysis, however, does not apply to any of the assets that were never connected to a New York correspondent account. Unlike in *Peterson*, "the [Judgment Debtor's] interest in and purported entitle[ment] to the possession of" those assets *could* exist without IBL's access to and transfers through correspondent accounts in New York. *Peterson*, 121 F.4th at 1004-05. There are no allegations that the accounts denominated in non-dollar currencies were routed through the United States or are connected to transactions made through correspondent accounts in some way. Thus, despite the permissive standard under C.P.L.R. § 302(a)(1), the Court finds that there is no

connection to the use of New York correspondent accounts and the elements of Iraq Telecom's claim for turnover. Therefore, the Court concludes that it lacks jurisdiction to order turnover of assets in these accounts.[4]

## II. Turnover Relief

As for relief with respect to the dollar accounts, the Court concludes that the current factual record leaves too many substantial questions unanswered regarding the scope and legitimacy of the superiority of the Judgment Debtors' interests in the underlying assets. Accordingly, the motion is **DENIED WITHOUT PREJUDICE** to renewal following a formal discovery motion.

As noted above, under C.P.L.R. § 5225(b), "where a person has possession or custody of assets in which a judgment creditor has an interest, if the judgment debtor is entitled to possession of the property, then the court may require the person in possession of the assets to turnover to the judgment creditor that which is sufficient to satisfy the judgment." *See Foley*, 683 F. Supp. 3d at 393. "[W]here it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require [IBL] to pay the money" to Iraq Telecom. C.P.L.R. § 5225(b). A judgment creditor may seek turnover against any kind of personal property, including intangible property rights. *See Attestor Master Value Fund LP v. Argentina*, 113 F.4th 220, 233-34 (2d Cir. 2024) (affirming turnover of reversionary interests in collateral securing sovereign bonds).

---

[4] The Court also rejects Iraq Telecom's attempt to capture these accounts under an alternative provision of the C.P.L.R. While this Court may exercise personal jurisdiction over any "non-domiciliary" who "commits a tortious act within the state, except as to a cause of action for defamation," C.P.L.R. § 302(a)(2), this provision can be used only to establish personal jurisdiction for tort claims. *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014) ("New York law limits § 302(a)(2) jurisdiction to tort claims"); *Twin Hills Holdings, LLC v. Furling*, No. 21 Civ. 3507, 2023 WL 2742303, at *6 (E.D.N.Y. Mar. 31, 2023) (same).

When Iraq Telecom filed its turnover motion, it had attempted, unsuccessfully, to obtain discovery into any superior interests in the assets of Judgment Debtors held by IBL. *See* Mem. in Supp. of Mot. for Turnover at 12-13. But in IBL's opposition brief, it asserted superior interests to nearly all of the assets sought by Iraq Telecom on this motion. For example, the "terms and conditions" applicable to Korek's and Mustafa's accounts at IBL are also alleged to expressly grant IBL the right to set-off those balances to satisfy amounts that the Judgment Debtors currently owe to IBL. *See* Decl. of Ziad El-Khoury ("El-Khoury Decl.") ¶¶ 33-38, ECF No. 36; Decl. of Karim Habib ("Habib Decl.") ¶ 45 & Ex. 10, ECF Nos. 35, 35-10. IBL also produced an alleged $155 million collateral agreement [redacted] of which Iraq Telecom disputes the legitimacy. *See* Opp'n to Mot. for Turnover at 11; *see also* ECF No. 37 (sealed unredacted version); [redacted] ECF Nos. 38, 38-5 (sealed); *see also* [redacted] ECF No. 39 (sealed). Per the Allocation Agreement, the $155 million is frozen [redacted] and the Judgment Debtors may not withdraw those funds [redacted]

On Reply, Iraq Telecom ultimately conceded that the existing record is insufficient to establish its right to turnover of the assets subject to the Allocation Agreement, acknowledging that "[t]he validity of that agreement . . . cannot be resolved without discovery." Reply Mem. in Supp. of Mot. for Turnover at 8, ECF No. 57. The Court concludes that questions regarding the set-off provisions further weigh against ordering turnover of any of the underlying assets in these accounts at this time. While the Court has the authority to order turnover of reversionary interests in these accounts, the Court concludes that, on this record, it would be inappropriate to do so. The exact scope and legitimacy of IBL's purportedly superior interests in the assets in question is not

clear on the current record, and the Court declines to award an amorphous reversionary interest that is, as of yet, undefined.

Accordingly, the Court **DENIES** the motion for turnover **WITHOUT PREJUDICE** to renewal after the benefit of discovery.

## CONCLUSION

For the reasons discussed herein, Motion for Turnover is **DENIED WITHOUT PREJUDICE**.

Within 14 days of this Order, Iraq Telecom may file a formal discovery motion relating to the Judgment Debtors' interests in the assets held by IBL and/or any other issues relevant to this motion. The motion shall describe the nature and scope of the discovery sought. IBL will then have 14 days from the date of any such motion to file a brief in opposition. Iraq Telecom shall file any brief in reply within seven days of the opposition brief.

The Clerk of Court is respectfully directed to terminate ECF No. 20.

SO ORDERED.

Dated: September 21, 2026
New York, New York

DALE E. HO
United States District Judge